UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EVONY, LLC, a Delaware limited liability company, | Case No:  C 11-0141 SBA |
| Plaintiff, | **ORDER GRANTING MOTIONS TO FILE SUPPLEMENTAL BRIEFING; GRANTING MOTION TO QUASH; AND DENYING  REQUEST FOR ALTERNATIVE SERVICE** |
| vs. | |
| AERIA GAMES & ENTERTAINMENT, INC., a Delaware corporation, and FENG INVESTMENT, LTD, a foreign corporation, | Docket 35, 46, 47, 48, 51 |
| Defendants. | |

On January 11, 2011, Plaintiff Evony, LLC ("Evony") brought this copyright infringement action against Defendants Aeria Games & Entertainment, Inc. ("Aeria Games") and Feng Investment, Ltd. ("Feng Investment") under 17 U.S.C. § 501 et. seq. Dkt. 1.  The parties are presently before the Court on Feng Investment's motion to quash service of summons and complaint for insufficient service of process under Rule 4 of the Federal Rules of Civil Procedure ("Rule 4").  Dkt. 35.  Evony opposes the motion and, in the alternative, requests Court-ordered alternative service of process under Rule (4)(f)(3). Dkt. 29.  Also before the Court are motions filed by the parties requesting permission to file supplemental briefing under Civil Local Rule 7(d).

Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS the motions requesting permission to file supplemental briefing, GRANTS Feng Investment's motion to quash, and DENIES WITHOUT PREJUDICE Evony's request for Court-ordered alternative service of process, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.     **BACKGROUND**

The instant action ("Evony action") is related to an action entitled Heroic Era, Ltd v. Evony, LLC, C 10-2458-SBA-BZ ("Heroic action").  Dkt. 30.[1]  The Heroic action was filed on June 3, 2010.  See Compl., Dkt. 1 in the Heroic action.  The Evony action was filed on January 11, 2011.  Compl., Dkt. 1.

A.     **Heroic Action**

On June 3, 2010, Plaintiff Heroic Era, Ltd. ("Heroic Era") commenced an action against Defendants Evony and Regan Mercantile, LLC ("Regan"), seeking a declaratory judgment that it had not infringed Evony's copyright interests and had not misappropriated trade secrets belonging to Evony.  Heroic action Compl. ¶¶ 6, 39, 49.  Heroic Era also alleged a claim for tortious interference with business relations.  Id. ¶¶ 51-56.[2]

Heroic Era is a foreign corporation with its principal place of business in Guangzhou, China.  Heroic action Compl. ¶ 14.  Heroic Era develops and operates online videogames, including one known as Caesary ("Caesary Game").  Id. ¶¶ 1, 17.  The Caesary Game is a browser-based real-time strategy game and is available on the online gaming network of Kongregate, which is located in San Francisco, California.  Id. ¶¶ 1-2, 17, 19, Exh. B.

Evony is a Delaware limited liability company and Regan is a New York limited liability company.  Heroic action Compl. ¶¶ 15-16.  Evony and Regan (collectively, "Defendants") are companies that also develop and operate online videogames, including one known as Evony ("Evony Game").  Id. ¶ 3.  The Evony Game is a browser-based real-time strategy game with similar overall functionality as the Caesary Game.  Id.

On May 4, 2010, the Defendants sent Kongregate a notification letter under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, demanding that it remove,

---

[1] Unless otherwise specified, all references to the record are references to the record in the instant action.

[2] Heroic Era's tortious interference with contract claim is based on alleged false accusations of misappropriation of trade secrets and copyright infringement made by Evony and Regan to other business entities.  See Heroic action Compl. ¶¶ 51-56.

or disable access to, the Caesary Game from its browser, claiming that the videogame infringed upon Evony's copyright interests in the Evony Game.  See Heroic action Compl., Exh. A.  Specifically, the letter claims that the owner and developer of the Caesary Game, "which is available for play at Caesary.net and through . . . Kongregate.com, has knowingly engaged in copyright infringement, has utilized stolen and misappropriated copyright protected software code and is currently utilizing said code in their recent title, [the Caesary Game], available to play through www.kongregrate.com."  Id.

In response to this letter, Heroic Era's CEO, Yuanfeng Lu ("Lu"),[3] sent Kongregate a counter notification letter under the DMCA, see 17 U.S.C. § 512(g)(3), claiming that his Caesary Game does not contain any infringing content.  See Heroic action Compl. ¶ 22, Exh. B.  In this letter, Lu states that Evony's claims of copyright violation should be rejected because "the complainant does not hold the copyright to the material in question, is not the designated representative of the copyright holder, and therefore lacks standing to assert that his use of the material is a violation of any of the owner's rights."  Heroic action Compl., Exh. B.  The letter also states that Lu has "a good faith belief that the complaint of copyright violation is based on mistaken information, misidentification of the material in question, or deliberate misreading of the law."  Id.

The letter further states that, "[h]aving received this counter notification, you [i.e., Kongregate] are obligated under 17 USC 512(g)(2)(B) to advise [Evony] of this notice, and to restore the material in dispute (or not take the material down in the first place), unless [Evony] files suit against me within 10 days."  Heroic action Compl., Exh. B.  In his letter, Lu provided his address in China[4] and a telephone number.  Id.  He also stated that he

---

[3] See Derek Linke Supplemental Declaration ("Linke Supp. Decl.") ¶ 4, Exh. A, Dkt. 48-3 (stating that Lu is the CEO of Heroic Era).  According to Heroic Era, Lu is a citizen of China.  See Dkt. 60 in the Heroic action.

[4] The address provided by Mr. Lu is "Room 3004, NO 300 Kong Wong South ST, Liwan DISTRICT, Guangzhou, P.R. China. Postal Code: 510140."  Heroic action Compl., Exh. B.  This is does not appear to be Lu's home address.  Rather, it appears to be the address of Heroic Era.  See Linke Supp. Decl. ¶ 4, Exh. A (indicating that Lu is the CEO of Heroic Era, which is located at "Room 3004, No. 300 Kong Wong South St. Liwan District, Guangzhou, 51040").

1  consents to the jurisdiction of the Federal District Court for the judicial district in which the

2  service provider (i.e., Kongregate) may be found (i.e., the Northern District of California),

3  and that he "agree[s] to accept service of process from [Evony]" if Evony files suit against

4  him.  Id.

5      On August 13, 2010, the Defendants counterclaimed against Heroic Era, alleging

6  two claims for relief: (1) copyright infringement under 17 U.S.C. § 501 et seq.; and (2)

7  misappropriation of copyright.  Answer and Counterclaims ("Counterclaims"), Dkt. 19 in

8  the Heroic action.  The Defendants alleged that Evony is the owner of a copyright

9  registration for the Evony Game, U.S. Copyright Registration No. TX0007175070 ("the

10  '070 Copyright").  Heroic action Counterclaims ¶¶ 11, 21.

11      The Defendants further alleged that Evony employed Lu from about August 2008

12  through about March 2009 to market products related to the Evony Game, and that Lu's

13  employment gave him access to Evony's copyrighted materials.  Heroic action

14  Counterclaims ¶¶ 12, 22, 28.  The Defendants also alleged that Lu began working for

15  Heroic Era while, or soon after, he worked on projects related to the Evony game.  Id. ¶ 13.

16      According to the Defendants, after the launch of the Evony Game, Heroic Era

17  launched the Caesary Game through Kronegregate.  Heroic action Counterclaims ¶ 14.  The

18  Defendants claim that the Caesary Game infringes Evony's copyright in the Evony Game,

19  and that Heroic Era misappropriated Evony's copyright by copying Evony's copyrighted

20  material and producing the Caesary Game.  See id. ¶¶ 21-24, 27-30.

21      On February 25, 2011, due to Heroic Era's failure to comply with its discovery

22  obligations, Magistrate Judge Bernard Zimmerman (the "Magistrate") issued an Order,

23  which, among other things, directed Heroic Era to produce a Rule 30(b)(6) witness (i.e., an

24  officer, director, managing agent or other person who consents to testify on behalf of

25  Heroic Era) for deposition in San Francisco by March 9, 2011.  Dkt. 78 in the Heroic

26

27

28

action.[5]  In this Order, the Magistrate expressly warned Heroic Era that failure to abide by the Order could result in sanctions pursuant to Rule 37(b)(2)(A), such as dismissal of Heroic Era's complaint and the entry of Heroic Era's default on Defendants' counterclaims. Id.

On March 9, 2011, Heroic Era failed to appear for its deposition and its counsel notified the Magistrate that Heroic Era would not appear.  See Dkt. 89 in the Heroic action. As a consequence, the Magistrate struck Heroic Era's complaint and dismissed its action against the Defendants with prejudice.  Id.  The Magistrate also struck Heroic Era's answer to the counterclaims and ordered the Defendants to move for a default judgment to prove-up their damages.  Id.  The Defendants subsequently filed a motion for default judgment on their counterclaims.  See Dkt. 92 in the Heroic action.

On May 5, 2011, the Magistrate issued a Report and Recommendation, which recommended that judgment be entered in favor of the Defendants on their counterclaims. See Dkt. 108 in the Heroic action.  The undersigned adopted the Report and Recommendation on September 12, 2011.  See Dkt. 125 in the Heroic action.  In addition to damages, attorneys' fees and costs, the Defendants were granted injunctive relief in the form of an order prohibiting Heroic Era from using, selling or distributing the source code for the Caesary Game.  Id.

**B.    Evony Action**

**1.    Complaint**

On January 11, 2011, Evony commenced the instant action against Aeria Games and Feng Investment, alleging two claims for copyright infringement.  See Compl.  Feng Investment is a company organized under the laws of the British Virgin Islands.  Id. ¶ 4.

---

[5] The Magistrate also ordered that the eight witnesses identified by Heroic Era and served with Rule 45 subpoenas to attend a deposition, including Lu (see Dkt. 60 in the Heroic action), are precluded from offering any testimony by declaration or at trial because they neither objected to the Rule 45 subpoena nor appeared for deposition.  See Dkt. 78 in the Heroic action.

As noted above, Evony is a Delaware company that owns and operates the internet browser-based game referred to herein as the Evony Game.  Id. ¶ 10.

The complaint in the instant action contains similar allegations as the allegations alleged in support of the counterclaims in the Heroic action.  See Compl.  Specifically, Evony alleges that it is the owner of all exclusive and substantial rights and privileges in the '070 Copyright, id. ¶11, which comprises the computer code for the Evony Game.  See Heroic action Counterclaims ¶¶ 11, 21.

As in the Heroic action, Evony also alleges that it employed Lu from about August 2008 through about March 2009 to market products related to the Evony Game, and that Lu's employment gave him access to Evony's copyrighted materials, including the computer source code for the Evony Game.  Compl. ¶ 12.  Evony further alleges that Lu began working for Feng Investment and Heroic Era while, or soon after, he worked on projects related to the Evony game.  Id. ¶ 13.

According to Evony, Feng Investment and Heroic Era released the Caesary Game after the Evony Game was released and after Lu had worked on the Evony Game.  Compl. ¶ 14.  Evony alleges that Feng Investment claims to own the rights in the Caesary Game and sells copies of the game to third party publishers in exchange for royalties.  Id. ¶¶ 17, 19.  Evony further alleges that Feng Investment publishes, distributes and sells the Caesary Game through a website it owns and operates at the internet address www.caesary.net.  Id. ¶ 20.  Evony also alleges that after the launch of the Evony Game, Feng Investment entered into an agreement to publish, distribute, and sell the Caesary Game, which Aeria Games does through the internet at http://caesary.aeriagames.com.  Id. ¶¶ 25-27.[6]

---

[6] According to Heroic Era, Feng Investment is a distributor for the Caesary Game.  See Dkt. 60 in the Heroic action.  However, in the Heroic action, Evony produced evidence indicating that Feng Investment claims to be the copyright owner of the Caesary Game.  See O'Connor Decl., Exh. G, Dkt. 37 in the Heroic action.  Specifically, Evony produced a document indicating that, on August 30, 2010, Feng Investment entered into a license agreement with Aeria Games wherein Feng Investment represented that it owns all rights in the Caesary game and licensed those rights to Aeria Games in exchange for monthly royalties.  Id.  The Court notes that Lu also appears to claim ownership of the Caesary Game.  See Heroic action Compl., Exh. B.

Evony claims that the copyrighted software code used in the Caesary Game is the same as the code used in the Evony Game, and that Lu provided Feng Investment and Heroic Era with the code.  See Compl. ¶¶ 12-16.  Evony further claims that the Caesary Game published and operated by Feng Investment and Aeria Games is a copy or substantial copy of the '070 Copyright, and therefore their publication and operation of the Caesary Game infringes upon Evony's rights and privileges in the '070 Copyright.  See id. ¶¶ 34-37, 41-44.

By this action, Evony seeks a judgment declaring that Feng Investment and Aeria Games infringed the '070 Copyright.  See Compl.  Evony also seeks damages, injunctive relief, and attorneys' fees and costs.  See id.

### 2.    Service of Process

On January 12, 2011, Evony attempted to effect service of process on Feng Investment by leaving a copy of the summons and complaint with Arlyne Carrico at the office located at 1201 Third Avenue, Suite 1600, Seattle, WA 98104.  Dkt. 15.  It is undisputed that, at the time of service, this location was the address of Newman & Newman LLP, now Newman Du Wors LLP (the "Newman Firm"), which is the law firm that represents Feng Investment in the instant action and that represented Heroic Era in the related Heroic action.  The Proof of Service indicates that the party served was "Feng Investment, Ltd., c/o Yuafeng Lu," and that the person served was Lu, "Agent for service of process."  Dkt. 15.  A copy of the summons and complaint were also mailed to the Newman Firm on January 13, 2011, addressed to "Feng Investment, Ltd., c/o Yuafeng Lu."  Id.

On February 2, 2011, Feng Investment filed a motion to quash service of summons and complaint for insufficient service of process under Rule 4.  Dkt. 17.  After the matter was reassigned to Judge William Alsup, Dkt. 21, Feng Investment renoticed its motion to quash.  Dkt. 26.  On March 3, 2011, Evony filed an opposition to the motion and, in the alternative, requested Court-directed alternate service of process under Rule (4)(f)(3).  Dkt. 29.  Following reassignment of this case to the undersigned, Feng Investment renoticed its

1    motion to quash.  Dkt. 35.  The parties both subsequently filed motions requesting

2    permission to file supplemental briefing under Civil Local Rule 7(d).  Dkt. 46, 48.[7]

3    **II.    DISCUSSION**

4         **A.    Feng Investment's Motion to Quash**

5         Feng Investment argues that an order quashing service is warranted because Evony's

6    method of service did not satisfy the requirements of Rule 4(h), which provides the rules

7    for serving a foreign corporation.  Specifically, Feng Investment contends that Evony failed

8    to properly effect service because Evony did not serve an officer, managing or general

9    agent, or other agent authorized by law to receive service.  Instead, Evony served a

10   receptionist at the Newman Firm with a complaint and summons stating that the party

11   served was "Feng Investment, Ltd., c/o Yuafeng Lu."

12        Feng Investment maintains that Evony's delivery of the summons and complaint to a

13   law firm that did not represent Feng Investment or Lu at the time of service,[8] and has never

14   been authorized to accept service of process on behalf of Feng Investment, does not satisfy

15   any of the available options for service under Rule 4.  According to Feng Investment,

16   because it is a British Virgin Islands company with its principal place of business in China,

17   and because the British Virgin Islands and China are signatories to the Hague Convention

18   on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"),[9]

19   Evony was required to effect service as authorized by the Hague Convention.

20   ///

21   ─────────────────

22        [7] Because the Court finds that the supplemental briefing submitted by the parties is helpful to the resolution of the matters before the Court, the Court GRANTS the motions requesting permission to file supplemental briefing.

23

24        [8] The Court notes that there is evidence in the record that contradicts Feng Investment's claim that the Newman Firm did not represent Feng Investment at the time of service.  An e-mail dated January 4, 2011, i.e., approximately a week prior to Evony's attempted service on Feng Investment, indicates that Feng Investment was represented by the Newman Firm on or before January 4, 2011.  Andrew O'Connor Affidavit ("O'Connor Aff."), Exh. G, Dkt. 29.

25

26

27        [9] See Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765.

28

### 1.     Evony Bears the Burden of Proving Valid Service

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process.  Omni Capital Int'l, Ltd. v. Wolff & Co., 484 U.S. 97, 104 (1987); see also SEC v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007) ("Service of process is the means by which a court asserts its jurisdiction over the person.").  To determine whether service of process is proper, courts look to the requirements of Rule 4.  Once service of process has been challenged by the defendant, plaintiff bears the burden of proving valid service in accordance with Rule 4.  See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  Ordinarily, where the court finds that the method of service of process was not proper, the remedy is to quash service and require plaintiff to effect proper service.  Stevens v. Security Pacific Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).

### 2.     Standard Governing Service on A Foreign Corporation

For a corporate defendant, service must be effectuated in accordance with Rule 4(h).  While valid service may be accomplished on a foreign corporation in various ways under Rule 4(h), Evony only contends that service of process was properly effectuated pursuant to Rule 4(h)(1)(B).  As such, the Court will limit its analysis to determining whether Evony has satisfied its burden of proving valid service pursuant to Rule 4(h)(1)(B).

Under Rule 4(h)(1)(B), service may be effected by "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant." Fed.R.Civ.P. 4(h)(1)(B).  In the Ninth Circuit, "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." Direct Mail Specialists v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988).  Service may be made " 'upon a representative so integrated with the organization that he will know what to do with the papers.' " Id.  Thus, service on an individual who holds a position that indicates authority within the organization generally is sufficient.  Id.

Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint. <u>Direct Mail</u>, 840 F.2d at 688. However, without substantial compliance with Rule 4 neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction. <u>Id.</u>

### 3. Evony Did Not Properly Effectuate Service on Feng Investment

Evony contends that Feng Investment was "effectively" served under Rule 4(h)(1)(B) when the summons and complaint were left with the "person-in-charge" of the Newman Firm "c/o Yuafeng Lu." <u>See</u> Dkt. 15. The Court disagrees.

The Proof of Service filed by Evony does not show that the summons and complaint were served on any of Feng Investment's officers, managing or general agents, or any other agent authorized by appointment or by law to receive service of process as required under Rule 4(h)(1)(B). Instead, the Proof of Service shows that a copy of the summons and complaint were served on Arlyne Carrico ("Carrico"), the "person-in-charge" of the office located at 1201 Third Avenue, Suite 1600, Seattle, Washington, 98104, i.e., the Newman Firm. <u>See</u> Dkt. 15.

The undisputed evidence shows that Carrico is a receptionist with the Newman Firm, not an employee of Feng Investment. Linke Supp. Decl. ¶ 12. There is no evidence in the record demonstrating that Carrico is a person with sufficient authority to accept service of process on behalf of Feng Investment. Evony did not offer any evidence demonstrating that Carrico is an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process on behalf of Feng Investment. Nor did Evony offer evidence demonstrating that the Newman Firm is authorized to accept service of process on behalf of Feng Investment. As such, the Court finds that Evony failed to properly effectuate service on Feng Investment under Rule 4.[10]

---

[10] The Court notes that while the Proof of Summons indicates that service was accomplished by substituted service, Evony does not contend that service complied with the applicable rules governing substituted service. Thus, the Court finds it unnecessary to address this issue.

1    Evony, for its part, did not offer controlling authority or persuasive argument

2    supporting a contrary conclusion.  Evony primarily relies on <u>Direct Mail</u> to support its

3    position that Feng Investment was properly served under Rule 4 when a copy of the

4    summons and complaint were left with Carrico at the Newman Firm.  However, the facts

5    underlying the Ninth Circuit's decision in that case are materially distinguishable from the

6    facts in the present case, and therefore <u>Direct Mail</u> is of no assistance to Evony.

7    In <u>Direct Mail</u>, the Ninth Circuit concluded that service of process on a receptionist

8    in the shared office of the defendant corporation and another corporation was sufficient to

9    properly effectuate service under Rule 4.  <u>Direct Mail</u>, 840 F.2d at 688-689.  In reaching

10   this conclusion, the court found that although the receptionist was not technically "an

11   officer, a managing or general agent" or otherwise specifically designated by the

12   corporation to receive process, she was "a representative so integrated with the

13   organization" that she knew what to do with the papers.  <u>Id.</u>  The court observed that the

14   company was small and "the role played by the receptionist was commensurately large in

15   the structure of the company," and the fact that she was the only employee available in the

16   office at the time indicated "that more than minimal responsibility was assigned to her."  <u>Id.</u>

17   These circumstances, coupled with evidence that corporate officials had received actual

18   notice of the process, led the court to conclude that the service was proper.  <u>Id.</u> at 689.

19   <u>Direct Mail</u> is distinguishable from the present case.  Here, unlike in <u>Direct Mail</u>,

20   there is no evidence about the individual receiving service, except that she is a receptionist

21   with the Newman Firm.  Newman Decl. ¶ 9, Dkt. 48-4.  For instance, there is no evidence

22   indicating that she played any role in the structure of Feng Investment or had any authority

23   within that organization.  Indeed, there is no evidence that Carrico held any position or

24   maintained any affiliation with Feng Investment.  Accordingly, unlike in <u>Direct Mail</u>, it

25   cannot be said that Carrico is a representative so integrated within Feng Investment (i.e.,

26   the organization being served) such that delivery of the summons and complaint to her was

27   sufficient to effectuate service on Feng Investment.

28

To the extent Evony contends that it properly served Feng Investment by serving its principal and agent Lu by delivering a copy of the summons and complaint to the Newman Firm, this contention lacks merit.  As an initial matter, Evony did not cite any relevant authority or provide legal analysis in support of its contention that service on Lu through his counsel is sufficient to properly effect service on Feng Investment.  Moreover, even assuming for the sake of argument that Lu is authorized to accept service of process on behalf of Feng Investment,[11] and that Lu had an attorney-client relationship with the Newman Firm at the time of the attempted service as Evony claims, Evony failed to demonstrate that Lu expressly authorized the Newman Firm to accept service of process in this action or that the Newman Firm's authority to accept service was implicit in the circumstances of the Newman Firm's relationship with Lu.

Service of process on an agent is sufficient only if the agent is "authorized by appointment or by law to receive service of process."  Fed.R.Civ.P. 4(e)(2).  The attorney-client relationship by itself does not convey authority to accept service.  United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997); see Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1249 (9th Cir. 1987) (service of process on an attorney is ineffective unless the attorney has specific authority to accept service in the action).  Even where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service.  Ziegler, 111 F.3d at 881.  Instead, the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service.  Id.

Authority to accept process must either be express or implied from the type of relationship between defendant and the alleged agent.  Ziegler, 111 F.3d at 881; see also In re Focus Media, Inc., 387 F.3d 1077, 1082 (9th Cir. 2004) (noting that an agent's authority to accept process need not be explicit, it can be implied).  The critical inquiry in evaluating

_____
[11] Feng Investment appears to concede this point by acknowledging that Lu is a "representative" of Feng Investment.  Newman Decl. ¶¶ 7-8.  Further, Feng Investment does not take issue with Evony's characterization of Lu as a principal and agent of Feng Investment.

an attorney's authority to receive process is whether the client acted in a manner that expressly or impliedly indicated the grant of such authority.  In re Focus Media, 387 F.3d at 1083.  If the authority to accept service of process is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment, which indicate the extent of authority the client intended to confer.  Id.

Here, Evony does not argue that Lu expressly authorized the Newman Firm to accept service of process.  Rather, Evony contends that the Newman Firm was implicitly authorized to receive service based on the circumstances of the Newman Firm's relationship with Lu.  As evidence of the Newman Firm's authority to receive service, Evony points to the following actions in the related Heroic action: (1) the identification of Lu as a witness, and counsel's representation that Lu could be located "c/o Newman & Newman" at the firm's address; (2) the identification, in response to a discovery request, of Lu and Feng Investment as persons and entities that participated in the design, development, marketing, commercialization, analysis or testing of the Caesary Game, and counsel's representation that Lu and Feng Investment could be located "c/o Newman & Newman" at the firm's address; and (3) the Newman Firm agreeing to accept service of a Rule 45 witness subpoena on behalf of Lu.

The Court finds that Evony has failed to show that Lu implicitly authorized the Newman Firm to accept service of process on his behalf in this action.  Contrary to Evony's contention, the above-referenced actions do not suffice to establish a factual basis for this Court to conclude as a matter of law that the Newman Firm had implicit authorization to accept service of process on behalf of Lu in this action.  Indeed, Evony did not point to any specific aspect of the relationship between Lu and the Newman Firm demonstrating an intent on the part of Lu to confer authority on the Newman Firm to accept service of process.  None of the actions pointed to by Evony establish that the Newman Firm exercised authority beyond the attorney-client relationship which evince an intent on the part of Lu to authorize the Newman Firm to accept service of process on his behalf in this action.  Accordingly, because Evony has failed to sustain its burden to demonstrate valid

service of process on Feng Investment under Rule 4, Feng Investment's motion to quash is GRANTED.  Because there is nothing in the record to indicate that proper service is impossible to effectuate, the Court will afford Evony an opportunity to serve Feng Investment in accordance with Rule 4(h).

**B.    Evony's Request for Court-Ordered Alternative Service**

In the event the Court determines that service of process was invalid under Rule 4, Evony requests that the Court order alternative service under Rule (4)(f)(3) 4.  Evony seeks to serve Feng Investment through its United States counsel, i.e., the Newman Firm. According to Evony, Court-directed service on Feng Investment's United States counsel is appropriate because: (1) it has been unable to locate a known address for Feng Investment or any other individual that may accept service on behalf of Feng Investment; (2) Feng Investment is dodging service and its counsel has gone out of its way not to disclose any address, individual or entity upon which service can be effected; (3) if alternative service is not ordered, Feng Investment will continue to dodge service and any attempt to effect service by some other means will only be met with more "gamesmanship and delay"; and (4) Feng Investment has actual knowledge of this action and has counsel representing it.

A district court may direct service on an individual in a foreign country by any "means not prohibited by international agreement."  Fed.R.Civ.P. 4(f)(3).  Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).  It is merely one means among several which enables service of process on an international defendant.  Id.  Federal courts have discretionary authority to direct alternative service under Rule 4(f)(3).  Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1239 (Fed. Cir. 2010); see also Rio Properties, 284 F.3d at 1016 ("the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is "commit[ed] to the sound discretion of the district court").  In exercising their discretionary authority, "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to

the defendant's attorney, telex, and most recently, email." <u>Rio Properties</u>, 284 F.3d at 1016. In order to obtain relief under Rule 4(f)(3), the plaintiff need "only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention." <u>Id.</u> at 1016 (affirming the district court's decision to allow service on a foreign corporation through its United States counsel).

Even if facially permitted by Rule 4(f)(3), a method of service must comport with constitutional notions of due process. <u>Rio Properties</u>, 284 F.3d at 1016. To meet this requirement, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Id.</u>

In <u>Rio Properties</u>, the Ninth Circuit affirmed a district court's authorization of service on a foreign corporation through its United States counsel where the foreign corporation had shown itself to be "an elusive international defendant, striving to evade service of process." <u>Rio Properties</u>, 284 F.3d at 1016 (noting that a plaintiff need not have attempted every permissible means of service of process before petitioning the court for alternative relief; rather, a plaintiff need only demonstrate that the facts and circumstances of the present case necessitate the district court's intervention). In <u>Rio Properties</u>, the foreign defendant refused service at its United States address and the plaintiffs were unable to discover the foreign defendant's location in Costa Rica. <u>Id.</u> at 1015 n. 4, 1016 (noting that the Hague Convention did not apply because Costa Rica is not a signatory). In those circumstances, the Ninth Circuit held that the district court properly exercised its discretion to allow alternative means of service. <u>Id.</u> The Ninth Circuit went on to find that this method of service of process comported with constitutional notions of due process because the foreign corporation's United States counsel had been specifically consulted by the foreign corporation regarding the lawsuit, counsel knew of the foreign corporation's legal positions, and "it seem[ed] clear that he was in contact with [the foreign corporation] in Costa Rica." <u>Id.</u> at 1017.

1    The Court finds that Evony has failed to demonstrate that the circumstances here

2  justify ordering service on Feng Investment through its United States counsel under Rule

3  4(f)(3).  In support of its request for Court-ordered alterative service, Evony relies on <u>Rio</u>

4  <u>Properties</u>.  Evony, however, has failed to show that Feng Investment is "an elusive

5  international defendant, striving to evade service of process."  <u>Rio Properties</u>, 284 F.3d at

6  1016.  While the Court recognizes that service of process under Rule 4(f)(3) is neither a

7  "last resort" nor "extraordinary relief," but rather "merely one means among several which

8  enables service of process on an international defendant," <u>id.</u> at 1015, and that a party "need

9  not have attempted every permissible means of service of process before petitioning the

10  court for alternative relief" under Rule 4(f)(3), <u>id.</u> at 1016, the Court finds that Evony has

11  not made a sufficient showing to establish a factual basis for the Court to conclude that the

12  facts and circumstances of the instant case necessitate the Court's intervention.

13    Specifically, Evony has failed to detail the efforts it has made to serve Feng

14  Investment other than the invalid attempt to serve Feng Investment discussed above.

15  Evony has not shown that despite using due diligence to ascertain Feng Investment's

16  whereabouts, Feng Investment has remained elusive.  Nor has Evony demonstrated that,

17  despite its best efforts, it has no options left to obtain service, and therefore needs the

18  Court's assistance.  In fact, Evony's argument in support of its request for alternative service

19  does not identify the specific actions it has taken to locate Feng Investment or the actions of

20  Feng Investment that justify a finding that Feng Investment is "an elusive international

21  defendant, striving to evade service of process."  In light of Evony's showing, the Court is

22  not convinced of the necessity of its intervention.

23    In addition, the Court finds that Court-ordered service is not appropriate because

24  Evony has failed to demonstrate that service on Feng Investment through its United States

25  counsel is permissible under the circumstances.  Under Rule 4(f)(3), the means of Court-

26  ordered service must not be prohibited by international agreement, including the Hague

27  Convention.  <u>See</u> Fed.R.Civ.P. 4(f)(3); <u>Rio Properties</u>, 284 F.3d at 1015 n. 4 (federal courts

28  are prohibited from issuing a Rule 4(f)(3) order in contravention of an international

agreement, including the Hague Convention).[12]  Here, Feng Investment argues that service must be effected in accordance with the Hague Convention because it is incorporated in the British Virgin Islands and its principal place of business is located in China, both signatories to the Hague Convention.  Evony's request for alternative service does not discuss the applicability of the Hague Convention[13] or otherwise provide any argument demonstrating that the alternative service requested is not prohibited by international agreement.  As such, the Court finds that Evony has not shown that alternative service under Rule 4(f)(3) is appropriate.

The above notwithstanding, the Court notes that Evony has expressed legitimate reasons for requesting Court-ordered alternative service.  In response, Feng Investment has failed to indicate whether a physical address for Feng Investment actually exists, or explain how Evony could locate and serve Feng Investment or any other individual that may accept service of process on behalf of Feng Investment.[14]  Nor did Feng Investment challenge Evony's accusation that it is evading service of process and will continue to evade service

---

[12] Notably, the Hague Convention did not apply in Rio Properties because Costa Rica is not a signatory.  Rio Properties, 284 F.3d at 1015, n. 4.

[13] In its opposition brief, Evony argues that Feng Investment has not offered any competent evidence to substantiate its claim that it is incorporated in the British Virgin Islands and its principal place of business is located in China.  Further, Evony requests that the Court strike the portions of Linke's declaration that support this claim on the ground that Linke lacks personal knowledge to make such statements.  However, even if the Court were to strike these portions of Linke's declaration, Evony has not provided any evidence or argument establishing that the Hague Convention does not apply to this case.  The Court notes that the operative pleading alleges that Feng Investment is a company existing under the laws of the British Virgin Islands, Compl. ¶ 4, which is a signatory to the Hague Convention.  See International Controls Corp. v. Vesco, 593 F.2d 166, 179 (2nd Cir. 1979); Richardson v. Attorney General of the British Virgin Islands, 2010 WL 2949438, at *1 (D. Virgin Islands 2010).

[14] In the related Heroic action, Heroic Era, which was represented by the Newman Firm, failed to provide the address of Feng Investment or the address of Lu in its responses to discovery requests.  Instead, Heroic Era provided the address of the Newman Firm.  O'Connor Aff., Exh. B.  In that action, Heroic Era also listed the Newman Firm's address as the address for Lu in Heroic Era's Rule 26(a)(1) initial disclosures.  O'Connor Aff., Exh. C; Linke Supp. Decl. ¶¶ 8-9.  This conduct suggests to the Court that Feng Investment's and Lu's addresses may have been purposely concealed.  Feng Investment did not offer a compelling reason why Heroic Era failed to disclose these addresses in the related Heroic action.

of process.  Feng Investment also does not dispute Evony's contention that Feng Investment has actual knowledge of this litigation and has counsel representing it.  In short, because it is not clear from the record that Evony cannot correct the deficiencies identified above with respect to its request for Court-ordered service under Rule 4(f)(3), Evony's request for such relief is DENIED WITHOUT PREJUDICE.[15]

## III.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.     The motions for supplemental briefing are GRANTED.

2.     Feng Investment's motion to quash is GRANTED.  Because there is nothing in the record to indicate that proper service is impossible to effectuate, the Court will afford Evony an opportunity to serve Feng Investment in accordance with Rule 4(h).

3.     Evony's request for Court-ordered alternative service of process is DENIED WITHOUT PREJUDICE to the filing of a renewed request for such relief that addresses the deficiencies identified herein.

4.     The parties shall meet and confer on the issue of service of process with respect to Feng Investment by no later than fourteen (14) days from the date this Order is entered.  If the parties are able to reach an agreement on this issue, they shall promptly notify the Court.  If the parties are unable to reach an agreement, Evony shall notify the Court how it intends to proceed.

5.     This Order terminates Docket 35, 46, 47, 48, 51.

IT IS SO ORDERED.

Dated: September 28, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[15] To the extent Evony requests that the Court enter an order compelling Feng Investment to disclose the names and individuals who can accept service on behalf of Feng Investment, this request is DENIED.  Evony did not cite any authority demonstrating that such relief is proper.